This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**SHIRLEY HASELBY,**

Plaintiff-Appellant,

v.                                                    **No. 32,943**

**GREGORY B. RICHARDSON, M.D.,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Law Offices of James P. Lyle, P.C.
James P. Lyle
Albuquerque, NM

for Appellant

Miller Stratvert P.A.
Lawrence R. White
Cody R. Rogers
Las Cruces, NM

for Appellee

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}    Plaintiff Shirley Haselby appeals the judgment as a matter of law entered in

favor of Defendant Gregory B. Richardson, M.D., in this medical malpractice case.

Because we agree with the district court that Plaintiff failed to present evidence supporting the elements of her claims, we affirm.

**BACKGROUND**

{2}     Plaintiff sought treatment in the emergency room of Gerald Champion Medical Center in Alamogordo, New Mexico, for abdominal pain she had been experiencing for a week. An emergency room physician's written note reported an ultrasound finding of gallstones when, in fact, the ultrasound report did not indicate the presence of gallstones. Based on the emergency room physician's note and on Plaintiff's symptoms and abnormal liver function test results, Defendant decided to remove Plaintiff's gallbladder using a laparoscope. During the surgery, Plaintiff's hepatic duct[1] became torn, and Defendant repaired the tear using a clip. Defendant also saw during the surgery that Plaintiff had diverticulitis.

{3}     Plaintiff sued Defendant for medical negligence, and the case proceeded to trial. In her case-in-chief, Plaintiff presented her own testimony and the testimony of Defendant, of the hospital's pathologist, and of her expert witness, Dr. Peter Ferrara. When Plaintiff rested, Defendant moved for judgment as a matter of law (also known as "directed verdict") on the ground that Plaintiff had not established that Defendant breached the standard of care to a reasonable degree of medical probability. The

---

[1]The parties also referred to the torn duct as the "bile duct.

2

district court took the matter under advisement and, following the lunch break, announced that it would grant Defendant's motion.

{4}	The district court explained its rationale. Relying primarily on *Baer v. Regents of the University of California*, 1999-NMCA-005, 126 N.M. 508, 972 P.2d 9, the court referred to the two claims in jury instructions tendered by Plaintiff: (1) that Defendant negligently performed the surgery to remove Plaintiff's gallbladder and (2) that Defendant mis-diagnosed Plaintiff with gallstones.

{5}	Beginning with the first claim, the court framed the issue as whether Plaintiff established to a reasonable degree of medical probability that surgery performed according to the standard of care would *not* have caused the bile duct tear. The court concluded that Plaintiff had not established this with the evidence she presented. The court noted that Dr. Ferrara in his testimony had described the tear as "inadvertent." Dr. Ferrara said that he would have used a suture rather than a clip to repair the tear, but that because he was not there during the surgery, he could not criticize Defendant's use of a clip. The problem with Dr. Ferrara's testimony on this claim, according to the district court, was that he never stated to a reasonable degree of medical probability either that the decision to use the clip rather than a suture caused additional injury to Plaintiff or that the tearing of the bile duct was the result of falling below the standard of care.

{6} As for Plaintiff's second claim—that Defendant mis-diagnosed Plaintiff with gallbladder disease—the district court explained that there can be mis-diagnosis without injury. The court noted that Dr. Ferrara described the claim as relating to Defendant's operating on Plaintiff without gallbladder disease being present. While there was evidence that the surgery should not have taken place, Plaintiff's claim, in the court's view, ultimately boiled down to Dr. Ferrara's opinion that a CT scan done prior to surgery would have shown diverticulitis and, because diverticulitis is usually treatable without surgery, according to Dr. Ferrara, doing a pre-operative CT scan would have prevented the surgery. Diverticulitis would have been an alternative explanation for Plaintiff's pain and symptoms and, according to Dr. Ferrara, a doctor acting in accordance with the proper standard of care would not have performed surgery.

{7} While Dr. Ferrara opined that the proper standard of care required a pre-operative CT scan, the district court concluded that Plaintiff failed to prove that such a scan would have established that surgery was unnecessary. The testimony established that an "eventual" CT scan showed Plaintiff's diverticulitis. But the court did not think one could conclude from that testimony that a pre-operative CT scan would have shown the diverticulitis. Even assuming that a pre-operative CT scan would have shown the diverticulitis, Dr. Ferrara did not testify that under a proper

4

standard of care a non-surgical treatment would be required. Nor did he testify that, to a reasonable degree of medical probability, if a pre-operative CT scan showed diverticulitis, a doctor would abandon a diagnosis of gallbladder disease and avoid surgery. The district court therefore granted Defendant judgment as a matter of law. This appeal followed.

**DISCUSSION**

**1.      Standard of Review**

{8}      In order to grant judgment as a matter of law, a district court must find that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Rule 1-050(A)(1) NMRA. "The sufficiency of evidence presented to support a legal claim or defense is a question of law for the [district] court to decide." *Sunwest Bank of Clovis, N.A. v. Garrett*, 1992-NMSC-002, ¶ 9, 113 N.M. 112, 823 P.2d 912. Judgment as a matter of law is generally disfavored. *See Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 7, 293 P.3d 954 ("Our Supreme Court has cautioned that judgment as a matter of law is a drastic measure that is generally disfavored inasmuch as it may interfere with the jury function and intrude on a ligitant's right to a trial by jury." (internal quotation marks and citation omitted)). Judgment as a matter of law is proper when there is "no substantial evidence

supporting one or more essential elements of the case." *Klopp v. Wackenhut Corp.*, 1992-NMSC-008, ¶ 3, 113 N.M. 153, 824 P.2d 293.

{9}     "In reviewing whether [judgment as a matter of law] was appropriate, we consider all evidence that has been properly admitted at trial, as well as all reasonable inferences deducible therefrom, resolving any conflicts or contradictions in the evidence in a light most favorable to the party resisting the motion." *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 31, 133 N.M. 804, 70 P.3d 794. Accordingly, the reviewing court "may consider only evidence that has been admitted in the plaintiff's case-in-chief and any evidence a defendant introduced through cross-examination." *Id.* Whether sufficient evidence exists as a matter of law to justify judgment in a party's favor is a question we review de novo. *Id.*

**2.     Plaintiff's Arguments**

{10}     Plaintiff makes two arguments on appeal. First, she broadly contends that Dr. Ferrara's testimony was sufficient for a reasonable juror to conclude that Defendant failed to act as a reasonably well-qualified physician under the circumstances as required by UJI 13-1102 NMRA. Second, she maintains that the district court usurped the jury's role by weighing the evidence.

**a.     Sufficiency of Dr. Ferrara's Testimony**

6

**{11}** We are not persuaded by Plaintiff's first argument, which relies on UJI 13-1102. That uniform jury instruction does nothing more than state the standard of care applicable to a specialist. *See* UJI 13-1102 Use Note ("This is the standard of care instruction applicable to a specialist."). While Dr. Ferrara recited a litany of ways in which he believed Defendant's conduct fell below the standard of care, he failed to testify about two of the essential elements of medical negligence—causation with respect to Defendant's alleged mis-diagnosis of gallbladder disease and breach with respect to the injury to Plaintiff's bile duct.

**{12}** To prove medical negligence, a plaintiff must show that (1) the defendant owed the plaintiff a duty; (2) the defendant breached the duty by departing from the proper standard of care; and (3) the defendant's acts or omissions proximately caused the plaintiff's injuries. *Brown v. Kellogg*, 2015-NMCA-006, ¶ 6, 340 P.3d 1274. The parties do not dispute the existence of duty, and Dr. Ferrara's testimony made a prima facie showing of breach, at least regarding the claimed mis-diagnosis. But, as the district court concluded, Plaintiff's evidence did not establish that Defendant's alleged mis-diagnosis caused injury to Plaintiff or that the injury to Plaintiff's bile duct was negligent.

**(1)    Mis-Diagnosis**

7

{13}     With respect to Plaintiff's claim that Defendant performed unnecessary surgery due to mis-diagnosed gallbladder disease, Plaintiff's evidence fell short. Dr. Ferrara testified that the applicable standard of care would require Defendant to review the ultrasound report instead of relying on the emergency room doctor's statement that the ultrasound showed gallstones and to perform a pre-operative CT scan to rule out diagnoses other than gallbladder disease. But Dr. Ferrara never stated that if Defendant had reviewed the ultrasound report himself and if he had performed a pre-operative CT scan, surgery would have been ruled out. In fact, evidence presented in Plaintiff's case-in-chief suggested that surgery would have ensued anyway.

{14}     Plaintiff presented the testimony of Defendant in her case-in-chief, and Defendant testified that a person does not have to have gallstones in order to have gallbladder disease. Indeed, the pathologist testified that he diagnosed Plaintiff's gallbladder as being diseased, and Dr. Ferrara had "no quibble" with that diagnosis. Defendant also testified that he did not need to consider the possibility that Plaintiff had diverticulitis before he performed surgery because the laparoscopic diagnosis of diverticulitis was equally good if not better than a diagnosis based on a CT scan. At the time of this surgery, the CT scan was in transition and was not quite as good as exploratory surgery. He said that surgery was something that needed to be done with or without the presence of gallstones.

8

**{15}** Dr. Ferrara agreed with Defendant that there are occasions where the gallbladder is diseased without evidence of gallstones. He also noted that the history of Plaintiff's illness indicated that her pain seemed to start in the upper center of her abdomen, and the gallbladder is located in the upper abdomen. And he agreed that the abnormal liver function shown by Plaintiff's pre-operative blood work can be found in gallbladder disease. Again, Dr. Ferrara never testified that, to a reasonable degree of medical probability, surgery would have been ruled out if Defendant had both reviewed the ultrasound report and performed a pre-operative CT scan.

**(2)    Injury to Bile Duct**

**{16}** Plaintiff's evidence also failed to establish that Defendant's negligence caused injury to Plaintiff's bile duct. *See Richter v. Presbyterian Healthcare Servs.*, 2014-NMCA-056, ¶ 56, 326 P.3d 50 (requiring the plaintiff to present proper evidence regarding the applicable standard of care and whether the physician's conduct fell below that standard). Dr. Ferrara testified that, during the course of the operation, "the bile duct was *inadvertently* injured, cut, or severed in some way." "Inadvertent" means "unintentional," *see* http://dictionary.reference.com/browse/inadvertent?s=t.  And, while Dr. Ferrara criticized Defendant's use of a clip rather than a suture to repair the injury, he also testified, "I wasn't there, and that's a surgical judgment and . . . so it would be hard for me to comment on that—on the quality of the tissue there. I would

say that would be unusual, but if [Defendant] says it's so, I'll accept that." He further testified that it would not automatically be below the standard of care to have an intraoperative injury to the bile duct. As a result, insufficient evidence was presented to establish that the inadvertent nick or injury to the bile duct during surgery resulted in an act of medical negligence by falling below any standard of care for this type of surgery.

{17} Given the absence of evidence establishing causation with respect to Plaintiff's claim of mis-diagnosis and the absence of evidence establishing negligence with respect to the claimed injury to the bile duct, the district court's order granting Defendant judgment as a matter of law was proper. Our conclusion is supported by *Baer*, the case the district court relied on. In *Baer*, the plaintiff's decedent was required by his employer to undergo periodic medical examinations. 1999-NMCA-005, ¶ 3. A chest x-ray in 1985 revealed a lesion in his lung that was initially interpreted as being benign, but a physician recommended periodic x-rays for the future. *Id.* In 1989, the decedent was examined by a physician's assistant, who failed to order a chest x-ray and, one year later, the decedent was diagnosed with large cell carcinoma and died shortly thereafter. *Id.* The decedent's widow sued the physician's assistant's employer for failure to order the follow-up x-ray. *Id.* ¶¶ 3-4.

{18}     The district court granted the defendant's motion for judgment as a matter of law because the plaintiff failed to show that any medical negligence proximately caused the plaintiff's injuries. *Id.* ¶ 5. This Court affirmed the district court's order because the plaintiff "never presented any such evidence from which a jury could have concluded that an x-ray administered in 1989 would likely have revealed the presence of the cancer that was diagnosed too late in 1990." *Id.* ¶ 20.

{19}     The present case is similar in that Plaintiff failed to present evidence from which a jury could have concluded that (1) Defendant's review of the ultrasound report and the ordering of a pre-operative CT scan would have ruled out surgery, or that (2) the tear to Plaintiff's bile duct was anything other than an inadvertently occurring event that can happen during laparoscopic surgery. Judgment as a matter of law was proper.

**b.     Alleged Weighing of the Evidence**

{20}     Plaintiff's second  argument is that the district court usurped the jury's role by weighing the evidence. Plaintiff does not flesh out this argument. Instead, she broadly states that "Dr. Ferrara established a *prima facie* portrait of classic medical negligence." We agree that Plaintiff's evidence established duty and, possibly, breach of duty in connection with Plaintiff's claim of mis-diagnosis.  But we disagree that Plaintiff showed that Defendant's mis-diagnosis caused any injury to her or that the

11

injury to her bile duct was caused by Defendant's negligence. We discern no weighing of the evidence by the district court.

**CONCLUSION**

{21}     For the foregoing reasons, we affirm the district court's entry of judgment as a matter of law in favor of Defendant.

{22}     **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

12